IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JACK SUTTON and DEE<br>SUTTON,<br><br>            Plaintiffs,<br><br>    v.<br><br>THOMAS E. REYNOLDS,<br><br>            Defendant. | CV. 05-1782-AS<br><br>OPINION AND ORDER |

ASHMANSKAS, Magistrate Judge:

Plaintiffs Jack and Dee Sutton ("Plaintiffs"),[1] brought this action under the False Claims Act

(31 U.S.C. §3729 *et seq.*)(the "Act)[2] asserting that defendant Thomas E. Reynolds ("Defendant")

violated the Act by misrepresenting the amount of rent he was collecting from Plaintiffs, whose rent

---

[1] Plaintiffs originally filed this action under seal on behalf of the United States of America, who declined the opportunity to intervene.

[2] Plaintiffs also asserted state law claims for retaliation, habitability and return of their security deposit.

was being subsidized by the United States Department of Housing and Urban Development ("HUD") under the Section 8 Tenant-Based Housing Choice Voucher Program ("Section 8 Program"). Defendant moves for summary judgment on this claim.

### Preliminary Procedural Matter

Defendant offers numerous documents and deposition transcripts attached as exhibits to his concise statement of material facts in support of this motion. The documents and transcripts are not authenticated in any way and the transcripts were not signed or certified by the court reporter.

A motion for summary judgment must be supported by evidence admissible at trail. Fed. R. Civ. P. 56(e). The Ninth Circuit has repeatedly held that "unauthenticated documents cannot be considered in a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). Deposition transcripts must be authenticated through identification of the deponent, the action to which the deposition relates and the "reporter's certification that the deposition is a true record of the testimony of the deponent." Id. at 774.

With the exception of the affidavits of Defendant and his brother, Emery Reynolds, and the sworn statement of Joan Lauinger, the documents supporting the motion for summary judgment are inadmissable and will not be considered by the court. Accordingly, the court will consider only the affidavits of the Reynolds, the Lauinger statement and the properly authenticated evidence offered by Plaintiffs.[3]

### Background

In early February 2002, Plaintiffs agreed to rent a home from Defendant for $625 a month.

---

[3]The court acknowledges that Plaintiffs have presented some of the same documents as Defendant and advises that it will consider this overlapping evidence.

The home was located at 5806 N.E. 57th Avenue #A, Portland, Oregon (the "Property"), and shared the lot with a second house owned and occupied by Defendant.[4]

Defendant submitted paperwork to the Housing Authority of Portland ("HAP")[5] asking that the Property be considered for approval as Section 8 housing. The Property was inspected and approved at a rental rate of $595. Defendant agreed to accept the approved rental rate, which was $30 less than the amount he requested and the amount Plaintiffs had originally agreed to pay. Accordingly, on March 7, 2002, Plaintiffs and Defendant entered into a rental agreement (the "Agreement"),[6] providing for payment of $595 per month. Plaintiffs would pay $406 per month and HAP would subsidize the remaining $189.[7] Plaintiffs were responsible for paying the electric and gas bills while Defendant agreed to pay for water, sewer and garbage service. Neither party expressly assumed the responsibility for maintaining the yard.[8]

Defendant also entered into a Housing Assistance Payments Contract (the "Contract") with HAP. Section 5(e) of Part C of the Contract provided that:

> The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances with the lease.

After signing the Agreement, and as Plaintiffs were preparing to move into the Property,

---

[4]Defendant's address was 5806 N.E. 57th Avenue #B, Portland, Oregon 97218.

[5] HAP managed the Section 8 Program in the Portland, Oregon, area for HUD.

[6]The rental agreement originally signed by the parties was actually amended this date by an addendum required by HAP.

[7]These amounts varied throughout the term of the lease but the total monthly rent remained at $595.

[8]The Contract provides that "Unless otherwise specified below, the owner shall pay for all utilities and appliances."

Page -3- OPINION AND ORDER                                                                            {SIB}

Defendant advised Plaintiffs that he would need to collect an extra $30 from them because of increased property taxes and utility payments. Plaintiffs agreed but asked Defendant to advise HAP that he was collecting the extra money.  Plaintiffs paid Defendant the extra $30 during the time they occupied the Property – a total of 39 months.  Defendant never informed HAP that he was collecting the extra money from Plaintiffs.[9]

Defendant's brother, Emery Reynolds, provided landscape services for the Property and Defendant's residence.  Defendant paid his brother $30 a month to mow lawns, rake leaves, pick up yard debris and clean the roofs and gutters at both houses. This practice was in effect prior to the time Plaintiffs moved into the Property.[10]

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  "[T]he requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anthes v. Transworld Systems, Inc.</u>, 765 F. Supp. 162, 165 (Del. 1991) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322-24 (1986).  Once the movant has met its burden, the onus is on the nonmovant to establish that

---

[9] It appears that Defendant requested rent increases on two separate occasions (to $640 on November 6, 2003, and to $615 on November 8, 2004), both of which were denied.

[10] Defendant's family members lived in the Property before Plaintiffs moved in.

there is a genuine issue of material fact. Id. at 324. In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## Discussion

Plaintiffs filed this action alleging that the extra $30 they paid to Defendant every month was additional rent and that Defendant's failure to advise HAP of his collection of this amount constitutes fraud on the United States in violation of the Act. Defendant asserts that Plaintiffs were responsible for maintaining the Property's yard and landscape, that Plaintiffs hired his brother to fulfill their obligation and that Defendant merely acted as his brother's agent in collecting the $30. Additionally, Defendant argues that the government was "not defrauded of any money" because the government "paid only that amount they had agreed to pay for the housing provided." Defendant's Motion for Partial Summary Judgment at 2.

Under the Act, a private individual is authorized to bring an action on behalf of the United States against any entity that has knowingly presented a false or fraudulent claim to the government. See, e.g., United States ex rel. Anderson v. Norther Telecom, 52 F.3d 810, 812-813 (9th Cir. 1995).

Section 3729(a)(1) is violated by one who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval. Section 3729(a)(2) is violated by one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." A "claim" includes "any request or demand, whether under a contract or otherwise, for money or property . . . . " Id. at 31 U.S.C. §3729(c).

The Ninth Circuit has fashioned a four-part test to establish a claim under either section of the Act.

> [Under] either the false certification theory or the promissory fraud theory, the essential elements of False Claims Act liability remain the same: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due.

U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006). Defendant argues that Plaintiffs' evidence fails to establish any of these elements. The court will address each element, in turn, below.

**"False Statement or Fraudulent Course of Conduct"**

The Housing Choice Voucher Program Guidebook published by HUD defines "fraud" and "abuse" in the Section 8 Program as:

> a single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, omission, or concealment of a substantive fact. Fraud and abuse result in the payment of housing choice voucher program funds in violation of program requirements. It often occurs when families or owners intentionally fail to report required information or report incorrect information to obtain benefits to which they are not entitled. Fraud is a legal term that involves taking legal action to pursue a remedy of the situation, such as terminating program assistance.

Ford-Avery Affidavit, Exh. 1 at 1. "Collecting extra or 'side' payments in excess of the family share

of rent or requiring the family to perform extraordinary services in lieu of payments" qualifies as fraud and/or abuse. Id. at 2. At least two District Courts have found that collection of additional rent beyond that allowed by a federally-funded program is actionable under the Act. U.S. ex rel. Smith v. Gilbert Realty Co., Inc., 840 F.Supp. 71 (E.D.Mich. 1993); Coleman v. Hernandez, 2007 WL 1515163, (D.Conn. 2007).

Here, the Contract specifically provided that Defendant was not allowed to collect more than $595 in payment for rent from the Plaintiffs. Rent was defined to include all housing services and maintenance. Accordingly, any amount collected by Defendant in excess of $595 that he used to pay for any housing services or maintenance would qualify as fraud and/or abuse under the terms of the Contract.

Defendant represents that he merely collected the additional amount from Plaintiffs for the benefit of his brother and in payment of his brother's landscape maintenance services. Plaintiffs assert that Defendant advised them that he needed the additional $30 for increased taxes and utilities. Based on the record before the court, a genuine issue of material facts exists with regard to proper characterization of the additional $30 paid to Defendant by Plaintiff.[11] Assuming, however, for the purposes of this motion that the $30 was for increased taxes and utilities, such payment clearly constitutes "side-rent", violates the terms of the Contract and supports a claim for a false statement or fraudulent course of conduct under the Act.

**"Made with Scienter"**

Defendant contends that a false statement must be known to be a lie when it is made to

---

[11]Defendant asks the court to make a credibility determination and find that Plaintiffs are not telling the truth. Credibility determinations are left to the ultimate trier of fact and are not made by the court at the summary judgment stage.

support a claim under the Act. Arguably, because Defendant had not received any side rent at the time he signed the Contract, he did not make a false statement at that time. However, the Contract is clear that Defendant was prohibited from accepting more than the $595 approved as a reasonable monthly rental during the term of the tenancy.

Part B of the Contract provided that:

> During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

Contract, Part B, Section 6(a). Additionally, by signing the Contract, Defendant certified that:

> Except for the rent to the owner, the owner has not received, and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract during the HAP contract term.

Contract, Part B, Section 8(d).

Part C of the Contract contained similar restrictions. In addition to the language in Section 5(e) quoted above, Section 4(c) provided that:

> During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:
>
> > (1) the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

Also, Part C required the owner to notify HAP "of any changes in the amount of rent to owner at least sixty days before any such changes go into effect." Contract, Part C, Section 15(d).

There is no doubt that the Contract limited the rent Defendant could collect from Plaintiffs, that Defendant knew of the limitation, and that Defendant was obligated to advise HAP if he collected additional rents from Plaintiffs. Under this scenario, Defendant's failure to advise HAP that he was collecting additional rents could be considered a misrepresentation by omission and

could constitute a knowing and intentional fraud on the government.

**"That was Material"**

Defendant argues that, even if the $30 payments are classified as additional rent, his acceptance of these payments were not material to HAP's decision to make or continue the subsidy payments. The court does not agree.

Defendant's initial request to rent the Property for $625 per month was denied by HAP, who set the monthly rental rate at $595. Clearly, the amount of rent Defendant intended to collect from Plaintiff was relevant to HAP's decision to enter into the Contract with Defendant. Once that decision was made and the Contract executed, Defendant was expressly prohibited from collecting more than $595 a month in rent by the terms of the Contract. Accordingly, Defendant's collection of more than $595 a month from Plaintiffs affected one of the most basic terms of the Contract and was relevant to HAP's decision to continue to pay the subsidy every month. In fact, Dena Ford-Avery, the Acting Director of the Section 8 Program for HAP, stated in her affidavit that had she known that Defendant was collecting the $30 from Plaintiffs, HAP would have ceased making monthly payments to Defendant.

**"Causing the Government to Pay Out Money or Forfeit Moneys Due"**

Finally, Defendant asserts that the additional $30 he collected from Plaintiffs had no effect on the government because "the government received precisely what it contracted for and paid the price it agreed to pay and no more." Memorandum in Support of Summary Judgment at 12. This assertion ignores the clear language of the Contract that the funding of the government subsidy was contingent upon Defendant collecting no more than $595 a month in rent.

The Contract specifically provided that "[u]nless the owner has complied with all provisions

of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract" and that the rights and remedies for Defendant's breach of the Contract "include recovery of overpayment, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract." Contract, Part B, Section 7(b) and Section 10(c). Once Defendant began collecting additional payments from Plaintiffs, HAP's obligation under the Contract could have been decreased, or even eliminated. Consequently, Defendant's failure to inform HAP that he was collecting the additional sums from Plaintiffs caused the government to pay moneys that it was no longer obligated to pay.

Plaintiffs have raised a genuine issue of material fact with regard to whether the additional $30 collected by Defendant was "side rent." Viewing the facts in the light most favorable to Plaintiffs, the court finds that Plaintiffs have adequately supported their claim for violation of the Act.

## Conclusion

Defendant's motion (#22) for partial summary judgment is DENIED.

DATED this 7th day of June, 2007.

    /s/   Donald C. Ashmanskas
       DONALD C. ASHMANSKAS
       United States Magistrate Judge